WILBERT EDISON FAULKNER, demandante y apelado, *v.* WILLIAM NIEVES y MARYLAND CASUALTY *Co.*, demandados y apelante la segunda.

Número 11087.

*Sometido:* 7 de abril de 1954. *Resuelto:* 10 de mayo de 1954.

*F. Fernández Cuyar* y *Rafael A. González,* abogados de la apelante; *Córdova & González* y *Alberto Picó,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

Instada demanda de daños y perjuicios por Wilbert Edison Faulkner contra William Nieves y Maryland Casualty

Co., una moción de sentencia sumaria presentada por esta última, fué declarada sin lugar por el antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan. Contestaron ambos demandados. En su contestación, la Maryland Casualty Co. negó las alegaciones fundamentales de la demanda y alegó entre otras como defensa especial no tener responsabilidad alguna bajo la póliza otorgada, toda vez que el asegurado y codemandado William Nieves violó las condiciones esenciales de su contrato de seguro (1) al dejar de notificarle por escrito de la ocurrencia del accidente relacionado en la demanda; (2) al dejar de enviarle en tiempo u ocasión algunos el emplazamiento y la demanda que le fueron servidos en el caso, y (3) al no prestarle la cooperación y ayuda requeridas bajo la póliza. El codemandado William Nieves se limitó a negar generalmente todos y cada uno de los hechos alegados en la demanda. Fué el pleito a juicio. A éste no compareció el codemandado Nieves. Ambas partes ofrecieron amplia prueba testifical y documental y el tribunal dictó sentencia declarando con lugar la demanda y condenando a los demandados a satisfacer al demandante la suma de $1,021.60 en concepto de daños y perjuicios, más las costas y $150 de honorarios de abogado. En su opinión figuran las siguientes conclusiones de hechos probados:

"Que el día 5 de junio de 1947 el vehículo HP-1984 del demandado William Nieves chocó negligentemente el vehículo P-3454 del demandante, mientras éste se hallaba detenido a la entrada del puente de báscula con dirección San Juan–Bayamón ocasionándole los daños y perjuicios siguientes:

"Por reparación del vehículo $550; por 18 días que dejó de trabajar a razón de $20 diarios más $111.60 que dejó de percibir durante esós 18 días por 31 niños que llevaba a la escuela a razón de $6.00 mensuales cada niño, $471.60.

"Que el día siguiente al del accidente el demandante visitó las oficinas de la Maryland Casualty Co. para informarlo y ese mismo día el Sr. José L. Colón se comunicó por teléfono con dicha codemandada informándole a una de sus empleadas que comunicara al Sr. Dones la reclamación del demandante. Es

conveniente hacer constar que el testigo José L. Colón desde 1933 está relacionado con el negocio de seguros y para la fecha del accidente que da lugar a esta acción era ajustador de seguros de la Anglo-Porto Rico Insurance Agency. Igual cargo desempeñaba el Sr. Dones en la Maryland Casualty Co.

"Que la Maryland Casualty Co. fué informada por el demandante y por el Sr. Colón del accidente, suministrándole sitio y fecha y dónde estaba depositado el vehículo y ofreciéndole copia del informe o parte policíaco. La demandada se dirigió al codemandado enviándole ciertos blancos que debía llenar para informar el accidente y nunca lo informó ni en forma alguna se ocupó de la reclamación.

"·       ·       ·       ·       ·       ·       ·       ."

En sus conclusiones de derecho manifestó:

"El demandante en esta acción notificó a la Maryland Casualty Co. de la ocurrencia del accidente, la hizo parte demandada al iniciar su acción y la emplazó y entregó copia de la demanda con anterioridad a emplazar al codemandado Nieves. El demandante se protegió contra esa defensa en esta forma. Si se tratara de una acción de William Nieves contra la Maryland Casualty Co. tendría razón esta última, pero el demandante puso a la demandada en condiciones de atender la reclamación y ésta se limitó a escudarse en la falta de aviso directamente de su asegurada."

Tan sólo la codemandada Maryland Casualty Co., apeló. Su única contención en apelación es que el tribunal sentenciador erró: al sostener la responsabilidad de ella "a pesar de declarar probado satisfactoriamente el hecho de que el asegurado nunca informó el accidente en ninguna forma y nunca dió cooperación alguna a la aseguradora, todo ello en violación de cláusulas específicas del contrato de seguro." Entre las condiciones contenidas en la póliza otorgada por la Maryland Casualty Co. en 2 de junio de 1947 en favor del codemandado William Nieves figuran las siguientes:

"6. *Notificación del accidente.* Cuando ocurra un accidente se dará por el asegurado o a beneficio de éste notificación escrita a la compañía o a cualquiera de sus agentes autorizados tan pronto como sea posible. Tal notificación contendrá datos sufi-

cientes para identificar al asegurado, así como información razonablemente obtenible respecto al momento, lugar y circunstancias del accidente, nombres y direcciones de los lesionados y de los testigos del caso.

"7. *Notificación de la reclamación o del pleito. Cubiertas A y B.* De presentarse reclamación o de iniciarse pleito contra el asegurado, éste remitirá inmediatamente a la compañía toda reclamación, demanda, emplazamiento u otro procedimiento recibido por él o por su representante.

"8. *Ayuda y cooperación del asegurado. Cubiertas A y B.* El asegurado cooperará con la compañía y a requerimiento de ésta asistirá a las vistas y juicios que se celebren y ayudará a que se efectúen transacciones, se obtenga evidencia, se logre la asistencia de testigos y en la conducción de los pleitos . . . ."

■■ Son enteramente válidas condiciones como las anteriores en una póliza de seguros. Van a la esencia del contrato mismo y su incumplimiento por el asegurado generalmente impide que pueda obtenerse indemnización del asegurador. *Buxó* v. *Aetna Casualty & Surety Co.*, 48 D.P.R. 187; *United States Fidelity & Guaranty Co.* v. *Miller*, 34 S.W.2d 938; 76 A.L.R. 12. Empero, ese principio general tiene múltiples excepciones. Conforme dijimos en *Colón* v. *Gobierno de la Capital*, 62 D.P.R. 25, 38, ". . . El reclamante de daños y perjuicios puede protegerse contra esa defensa notificando a la compañía aseguradora de la ocurrencia del accidente, haciéndola parte demandada al iniciar su acción y emplazándola y entregándole copia de la demanda." Véanse también Blashfield, *Cyclopedia of Automobile Law and Practice*, Vol. 6, parte 2, sec. 4033, pág. 38; *Pallasch* v. *U. S. Fidelity & Guaranty Co.*, 67 N.E.2d 883, 885; *Slavens* v. *Standard Acc. Ins. Co.*, 27 F.2d 859, 861; 29 Am. Jur., sec. 1090, pág. 817. *Cf. Md. Casualty Co.* v. *Pacific Co.*, 312 U. S. 270, 273. Ese principio es correcto y nos ratificamos en el mismo.

■ Es un hecho incontrovertido que el asegurado William Nieves no notificó por escrito, ni en forma alguna, la ocurrencia del accidente a la aseguradora. Sin embargo, de

los autos surge claramente que al siguiente día de ocurrido el accidente José L. Colón, ajustador de la aseguradora del demandante, notificó del accidente por teléfono a la codemandada Maryland Casualty Co., dándole información respecto a los vehículos que participaron en el mismo, sobre el sitio y fecha del accidente y respecto al lugar donde estaba el autobús del demandante; que en varias ocasiones posteriores el propio Colón—quien a tales fines actuaba en representación del demandante—habló con oficiales de la Maryland, ofreciendo suministrarles la información que necesitasen, y que éstos se limitaron a indicarle que Nieves aun no había *reportado* el caso; que el día siguiente al del accidente el demandante mismo visitó las oficinas de dicha codemandada e informó a ésta de lo sucedido, diciéndosele allí asimismo que el asegurado no había informado por escrito el accidente y visitando también a dicha codemandada con el mismo fin en varias ocasiones posteriores; que en adición a las conversaciones telefónicas a que antes se ha hecho mención, Colón escribió a la compañía demandada una carta en 21 de noviembre de 1947, acompañándole copia de otra dirigida a William Nieves en que se reclamaba a éste el pago de los daños y perjuicios por él causados y que esa carta no fué contestada por la aseguradora; que en 11 de febrero de 1948 Colón escribió nuevamente a la Maryland insistiendo en la reclamación de Faulkner; que seis días después del accidente la propia apelante se dirigió por escrito al codemandado Nieves incluyéndole la forma denominada "Aviso de Accidente" y pidiendo a éste que la llenara debidamente; y que no fué hasta el 3 de junio de 1948 que Faulkner presentó su demanda contra Nieves y contra la Maryland Casualty Co., siendo tanto uno como la otra debidamente emplazados y notificados con copia de la demanda.

El propósito del requisito de la notificación escrita a la aseguradora es colocar a ésta en condiciones de practicar prontamente la investigación correspondiente y de preparar su defensa—Blashfield, ob. cit., pág. 24; Vance *on Insurance*,

pág. 499—y aunque es innegable que la notificación escrita por el asegurado no la hubo, en casos de esta naturaleza el perjudicado se subroga en los derechos de aquél. *Hendershot* v. *Ferkel*, 68 N.E.2d 67 y casos citados a la página 70. El perjudicado—como subrogado—cumplió con tal requisito, notificando prontamente del accidente a la Maryland, informándole de los detalles del mismo y haciéndolo igualmente por escrito, por mediación de Colón, algunos meses después. A virtud de esas notificaciones la aseguradora tuvo pleno conocimiento del accidente. De haber deseado mayores informes fácilmente los hubiera podido lograr. *Federal Surety Co.* v. *Guerrant*, 38 S.W.2d 425 y casos citados a la página 428.

En casos similares al de autos se ha aplicado también la doctrina de renuncia (*waiver*), es decir la doctrina de que aunque la aseguradora ha tenido bajo la póliza derecho a que se le notifique por escrito del accidente, sus propias actuaciones han relevado al asegurado del cumplimiento de tal requisito. Couch, *Cyclopedia of Insurance Law*, vol. 2, sec. 548, pág. 1714; Couch, ob. cit., vol. 7, secs. 1526 y 1565, págs. 5427 y 5540; Blashfield, ob. cit., sec. 4032, pág. 34; *United States Fidelity & Guaranty Co.* v. *Miller*, supra. En su consecuencia, de no ser suficientes las notificaciones orales y escritas hechas por Faulkner a la codemandada, las actuaciones de ésta equivalieron a una renuncia de su derecho a ser notificada por escrito por el propio asegurado.

Por otra parte, para que el incumplimiento de la obligación de notificar por escrito releve a la aseguradora de responsabilidad es necesario que ésta demuestre que tal incumplimiento le causó daños sustanciales. *Conroy* v. *Commercial Casualty Ins. Co.*, 140 Atl. 905, 907. Aquí no hay el menor indicio de semejantes daños.

La palabra "cooperación" en una póliza como la aquí envuelta, significa el suministrar a la aseguradora la información necesaria que permita a ésta determinar si existe de su parte una defensa legítima en relación con la reclamación

que se le hace.  *Ocean Accident & Guarantee Corporation* v. *Lucas,* 74 F.2d 115, 117; *Coleman* v. *New Amsterdam Casualty Co.,* 160 N. E. 367, 369; 139 A.L.R. 784; *General Casualty & Surety Co.* v. *Kierstead,* 67 F.2d 523, 525.  Esa información, repetimos, no la dió en este caso el asegurado, mas sí la dió, y estuvo dispuesto en todo momento a darla, el propio perjudicado.  Ello a nuestro juicio basta, no precisamente porque la suministrada a la aseguradora la ponía en condiciones de determinar si le asistía o no una buena defensa, sino porque la colocó en posición de practicar con prontitud cualquier investigación necesaria y de concluir si su asegurado había sido o no culpable del accidente.

*No habiéndose cometido el único error señalado, debe confirmarse la sentencia apelada.*