JIMÉNEZ Y SALELLAS, INC., demandante y recurrente, *v.* MARYLAND CASUALTY CO., demandada y recurrida.

*Número:* CE-64-10      *Resuelto:* 1ro. de abril de 1965

---

*Rafael Pastor,* abogado del peticionario (recurrente); *Rivera Zayas, Rivera Cestero & Rúa* y *José R. Lázaro Paoli,* abogados de la demandada.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

La Compañía de Fomento Industrial de Puerto Rico contrató con la Brico Construction Co. la construcción de un edificio. Brico Construction lo construiría. Fomento le exigió a Brico la prestación de la fianza que la ley exige cuando el Gobierno o uno de sus organismos contrata para la construcción de una obra, 22 L.P.R.A. secs. 47 y 58. Sobre los términos de la fianza la ley dispone lo siguiente:

"La fianza antes mencionada será prestada por el contratista en efectivo, cheque certificado o con la garantía de una compañía fiadora autorizada para hacer negocios en Puerto Rico, y dicha fianza de pago garantizará mancomunada y solidariamente con el contratista, hasta el límite de responsabilidad de la fianza, (1) el pago a los obreros y empleados del contratista de los sueldos y jornales que devenguen en la obra; y (2) el pago, a las personas que vendan, suplan o entreguen equipo, herramientas y materiales para la obra, del precio o importe de los materiales, equipos y herramientas suplidos, vendidos o entregados. El monto de esta fianza de pago no será menor de la mitad del valor total del contrato, y de cualquier ampliación, extensión o adición a éste." 22 L.P.R.A. sec. 48 (Tomo 5, ed. 1964, pág. 16).

Brico prestó la correspondiente fianza, siendo la demandada la compañía fiadora.

Brico subcontrató con la demandante-recurrente la cons-

trucción del techo del edificio por el precio de $5,298.72. La recurrente cumplió su parte del contrato pero Brico le quedó a deber mil dólares a la demandante. La demandante instó acción en cobro de dinero contra la compañía fiadora. El Tribunal de Distrito declaró sin lugar la demanda basándose en que la causa de acción de la demandante había prescrito. El Tribunal Superior confirmó. Expedimos auto de *certiorari*.

Ante nos la recurrente señala los siguientes dos errores: (1) Que el Tribunal Superior erró al resolver que el término prescriptivo a que se refiere la ley no es susceptible de ser interrumpido por una reclamación extrajudicial; y (2) que dicho Tribunal erró al no resolver el planteamiento hecho por la demandante en el sentido de que la demandada estaba impedida de oponer a la demanda la defensa de prescripción. Para los efectos de su discusión hemos invertido el orden en que la recurrente los plantea.

Antes de resolver las dos cuestiones planteadas veamos brevemente la trayectoria de las actuaciones legislativas y judiciales que han creado la situación de derecho actual sobre esta materia. No fue hasta la aprobación de la Ley Núm. 388 de 9 de mayo de 1951 que los subcontratistas y suplidores de materiales en las obras públicas quedaron protegidos mediante la exigencia por ley de una fianza, contra la insolvencia o la negativa de los contratistas a pagar las deudas incurridas por ellos por concepto de servicios y materiales suplídoles. La Ley anterior, Ley Núm. 31 de 23 de abril de 1931, Leyes, pag. 341, limitaba su protección a los obreros y empleados que trabajasen en dichas obras. Además, independientemente de la citada ley del año 1931, el estado de derecho anterior a la Ley Núm. 388 de 1951 denegaba a los materialistas y subcontratistas prácticamente toda protección contra la insolvencia o la renuencia a pagar de los contratistas, debido a la anterior actitud judicial de interpretar restrictivamente los contratos de fianza. En *Cristy & Sánchez* v. *ELA*, 84 D.P.R. 234 (1961) reexaminamos los precedentes judiciales en-

tonces aplicables a las fianzas en la construcción de obras públicas. Allí revocamos expresamente los casos de *Municipio de Fajardo* v. *Axtmayer et al.*, 31 D.P.R. 823 (1923) ; *Morales* v. *Chabert*, 43 D.P.R. 119 (1932) ; y *Batlle* v. *Pereyó*, 67 D.P.R. 662 (1947) y dictaminamos que considerados conjuntamente el documento de fianza, el Pliego de Condiciones Generales y el contrato de obra pública, los proveedores de materiales y mano de obra, incluyendo a los subcontratistas, estaban cubiertos por el contrato de fianza. (¹)

También expresamos en dicho caso de *Cristy* que la interpretación restrictiva de las fianzas tuvo su auge en el tiempo en que los fiadores personales, por un mero acto de liberalidad, afianzaban el contrato, pero que ya ésa no era la situación debido al advenimiento de las compañías que se dedican al negocio de prestar fianzas mediante pago. Señalamos que en estos casos la interpretación liberal o inclusiva es la que prevalece. *Cristy*, supra, pág. 244. En decisiones posteriores nos hemos reafirmado en esa posición. V. *Ulpiano Casal, Inc.* v. *Totty Mfg. Corp.*, 90 D.P.R. 739 (1964) ; *A. L. Arsuaga, Inc.* v. *La Hood Const., Inc.*, 90 D.P.R. 104 (1964). Cf. *Maryland Casualty Co.* v. *Quick Const. Corp.*, 90 D.P.R. 329 (1964).

Examinemos el primer error arriba indicado. La disposición legal a que la recurrente alude en su señalamiento de error es el Art. 9 de la Ley Núm. 388 de 9 de mayo de 1951, 22 L.P.R.A. sec. 55, el cual lee como sigue:

"La causa de acción autorizada bajo las secs. 47 a 58 de este título contra la fianza y los fiadores del contratista se entenderá prescrita a los seis meses de aceptada finalmente la obra por el Estado Libre Asociado de Puerto Rico. Transcurrido dicho término podrá cancelarse la fianza, a menos que se encuentre pendiente alguna reclamación judicial, bajo las secs. 47 a 58 de este título. En tal caso no se cancelará la fianza hasta tanto se haya dictado sentencia final y firme respecto a la reclamación o

---

(¹) El contrato de fianza en ese caso se formalizó en el año 1948 por lo cual no le era de aplicación la Ley Núm. 388 de 1951.

reclamaciones pendientes, y se haya dado cumplimiento a ellas hasta el límite de responsabilidad de la fianza y de los fiadores."

La obra en cuestión fue aceptada por la Compañía de Fomento Industrial en 18 de enero de 1962. La demanda fue radicada el 20 de febrero de 1963, o sea, trece meses después de aceptada la obra. Argumenta la recurrente que el término de seis meses que establece el precepto arriba transcrito quedó interrumpido por reclamaciones extrajudiciales que ella llevó a cabo. Invoca el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, el cual dispone lo siguiente:

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

La recurrida sostiene que la causa de acción de la demandante prescribió al expirar el término de seis meses que concede la ley sin que la demandante instara reclamación judicial alguna. El Tribunal de Distrito concluyó que la causa de acción de la demandante "prescribió y caducó" a tenor con lo dispuesto en la citada Sec. 55 del Título 22 de L.P.R.A. El Tribunal Superior confirmó al Tribunal de Distrito y expresó que "en cuanto a la fianza y los fiadores el término de seis meses es fatal de no haber reclamación judicial."

No tiene razón la recurrente porque estamos ante un término de caducidad y no de prescripción. La propia ley en cuestión, por sus propios términos, se encarga de resolver el planteamiento al expresar taxativamente que "Transcurrido dicho término [de seis meses] podrá cancelarse la fianza, *a menos que se encuentre pendiente alguna reclamación judicial* bajo las secs. 47 a 58 de este título." 22 L.P.R.A. sec. 55. (Subrayado nuestro.) En ausencia de esa disposición tal vez tendría mérito el planteamiento hecho por la recurrente pero de nada vale argumentar contra la letra expresa de la ley. Como hemos visto, la ley exige que se haya incoado la reclamación judicial. Es este un caso en el cual, como observan Pérez González y Alguer, en que por la expresión

literal del precepto debemos concluir que se trata de uno de caducidad y no de prescripción.(²) Cf. *Srio. del Trabajo* v. *Tribunal Superior*, 91 D.P.R. 856 (1965) ; *Eisele* v. *Orcasitas*, 85 D.P.R. 89 (1962) y *Felici* v. *Ribas*, 11 D.P.R. 539, 546 (1906).

Puede añadirse a lo dicho que el legislador puertorriqueño tuvo como modelo una ley del Congreso de los Estados Unidos,(³) la cual también prescribe un término dentro del cual hay que ejercitar la acción, y la jurisprudencia federal ha sostenido que el ejercicio de la acción judicial dentro de ese término es imperativo so pena de perder el derecho.(⁴) Dicha jurisprudencia no la consideramos obligatoria pero sí es altamente persuasiva debido al mencionado origen de la Ley Núm. 388 aquí discutida.

De no haber sido explícito el estatuto, hubiésemos tenido que entrar en una operación de deslindar la prescripción extintiva de la caducidad. Es esta "una de las cuestiones más arduas y obscuras del derecho," dice Garceran De Vall en su documentadísimo volumen sobre este asunto.(⁵) En esto están contestes casi todos los civilistas. Castán expresa que "la técnica imprecisa de nuestro Código civil, y aún de nuestra doctrina científica (todavía poco elaborada en este punto), no permiten trazar con seguridad el deslinde entre los casos de prescripción y los de caducidad."(⁶) De Diego escribe que

---

(²)Notas de los autores citados en Enneccerus, *Tratado de Derecho Civil*, trad. y comentarios de dichos autores (1935) Tomo 1, Vol. 2, pág. 494.

(³)*40 U.S.C. secs. 270a y ss.*; Actas, Cámara, 1951, pág. 1296.

(⁴)*U.S. etc.* v. *Southern Construction Co.*, 229 F.Supp. 873 (1964) ; *Travis Equipment Co.* v. *D & L Const. Co. & Associates*, 224 F.Supp. 410 (1963) ; *U.S. etc.* v. *Buckeye Union Cas. Co.*, 207 F.Supp. 552 (1962) ; *U.S. etc.* v. *MacKenzie-Foster Co.*, 207 F.Supp. 210 (1962) ; *U.S. etc.* v. *Seaboard Sur. Co.*, 201 F.Supp. 630 (1961) ; *U.S. etc.* v. *Enterprise Engineering & Const. Co.*, 169 F.Supp. 131 (1958) ; *U.S. etc.* v. *Standard Acc. Ins. Co.*, 158 F.Supp. 616 (1958), confirmado en 257 F.2d 78 (1958).

(⁵)*La Prescripción Extintiva* (1944) pág. 27.

(⁶)*Derecho Civil Español, Común y Foral*, 10ma. edición, (1963) Tomo 1, Vol. 2, pág. 853.

"Las fronteras entre la caducidad y prescripción son sumamente borrosas en el Derecho." [7] La distinción entre la caducidad o decadencia y la prescripción es con frecuencia tan sutil, nos dice Rotondi, que algunos afirman que hay una identidad sustancial entre las dos instituciones. [8]

Ya que nuestro Código Civil, al igual que el español y a diferencia del italiano [9] no reglamenta ni define esta institución de la caducidad vamos a detenernos en ella por un momento. La doctrina y la jurisprudencia la reconocen aunque sus contornos, como hemos señalado, no están todavía claramente precisados. Pérez González y Alguer señalan que la deficiente técnica de nuestro Código Civil, en lo que a esta materia respecta, dificulta la diferenciación precisa entre la prescripción y la caducidad, de suerte que en muchos casos constituye un verdadero problema el determinar si se trata de una o de otra. [10] La doctrina al respecto es mayormente de formación jurisprudencial y aunque hay base en el Código Civil para la misma, su técnica si no estorba tampoco ayuda. La dificultad práctica de establecer la diferencia entre la prescripción y la caducidad o decadencia es tal que algunos autores se niegan a reconocer que haya diferencia alguna entre estas dos instituciones. [11]

Sin embargo, algunos autores han esclarecido considerablemente el problema. No es necesario vaciar aquí las exposi-

---

[7] *Instituciones de Derecho Civil* (1959), Tomo 1, pág. 335.

[8] *Instituciones de Derecho Privado*, trad. española de la sexta edición, Ed. Labor (1953) pág. 115.

[9] Éste trata el asunto en su Libro VI, Título V, Arts. 2934–2969, bajo el epígrafe "De la Prescripción y de la Decadencia." Dicho sea de paso, purgado ya de las impertinencias del fascismo, el Código Civil italiano de 1942 se considera el más moderno y el mejor o uno de los mejores de cuantos existen. Se encuentra una traducción al español del mismo en el Tomo 1 de Messineo, *Derecho Civil y Comercial*, tratado que consta de ocho tomos, y del cual hay una traducción española del magistrado español Sentis Melendo (1954).

[10] Ibid, pág. 492.

[11] V. Ruggiero, *Instituciones de Derecho Civil*, trad. española de la 4ta. ed. italiana, tomo 1, pág. 340; Rotondi, *supra*.

ciones que se han hecho sobre el particular pero sí puede ser de utilidad señalar algunas fuentes. Castán trata el asunto bajo el epígrafe "La Caducidad o Decadencia de Derechos" y señala las diferencias más importantes que él ve entre la prescripción y la decadencia. Véanse en la obra y volumen antes citados las páginas 850–854. Puede verse también Santamaría, *Comentarios al Código Civil* (1958), Tomo II, págs. 1212–1214 y Puig Peña, *Tratado de Derecho Civil Español* (1958), Tomo I, Vol. II, págs. 453–456. De Diego discute el asunto en su obra y tomo citados, págs. 334–335 y Messineo en el Tomo II de su citada obra, pág. 75. Velázquez en su *Las Obligaciones Según el Derecho Puertorriqueño* (1964), pág. 256, tiene una discusión sobre las diferencias entre la caducidad y la prescripción. Véase también la discusión que sobre el tema ha publicado dicho autor en "La Extinción de la Acción de Filiación en el Derecho Puertorriqueño," 17 Rev. C. Abo. P.R., págs. 237, 246–252 (1957).

Para ejemplos específicos de caducidad en el derecho civil, con referencia a los correspondientes artículos del Código, véanse las notas de Pérez González y Alguer en la obra y volumen citados, pág. 492; a Castán, obra y volumen citados, págs. 853–854; a Velázquez, *Las Obligaciones Según el Derecho Puertorriqueño* (1964), pág. 257; y el *Diccionario de Derecho Privado, Apéndice,* Editorial Labor (1963), pág. 179.

En el segundo error antes mencionado se invoca la doctrina del impedimento. Se argumenta que la demandada estaba impedida de levantar la defensa de la caducidad de la acción de la demandante debido a que aquélla ofreció pagar y a que indujo a la demandante a creer que se le pagaría sin necesidad de reclamación judicial. Sobre este aspecto la prueba fue conflictiva. El Tribunal que vio el juicio, el Tribunal de Distrito, determinó como cuestión de hecho que la demandada "en ningún momento se comprometió a pagar a la demandante la suma requerida ni hizo manifestación

alguna que pudiera inducir a dicha demandandante a creer que dicha suma habría de ser pagada por Maryland Casualty Co." No tenemos elementos de juicio que justifiquen que variemos esa determinación de hecho del tribunal de instancia. Obviamente ésa fue también la posición del Tribunal Superior y no tenemos razón para revocarlo. Tal vez el término de seis meses es demasiado corto en vista del tiempo que una compañía hábil puede retardar un asunto como éste y tal vez dicho término debiera ser de un año como es en la ley federal. En ese supuesto, el remedio prospectivo está en el foro legislativo y no en éste. En reclamaciones de esta naturaleza no instar la acción judicial dentro del término fijado por la ley y permitir que éste expire, por confiar en que pagarán voluntariamente revela una ingenuidad lamentable. Tampoco se cometió este segundo error.

*Se confirmará la sentencia del Tribunal Superior dictada en este caso, sin incluir condena de honorarios de abogado.*