# 2006 DTA 53

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE BAYAMÓN**
**PANEL VII**

ROYAL & SUN ALLIANCE INSURANCE (P.R.), INC.
Demandantes-Apelantes

v.

F.J. GRAZIANO AND ASSOCIATES; AMERICAN STATES INSURANCE COMPANY; MADERAS TRATADAS INCORPORATED; AMISTAD PROPERTIES; FULANO DE TAL Y SUTANO DE TAL; ASEGURADORAS 1 y 2
Demandados-Apelados

Núm. KLAN-2005-00226

San Juan, Puerto Rico, a 28 de febrero de 2006

Panel integrado por su Presidente, el Juez Martínez Torres,
la Juez Fraticelli Torres y el Juez Brau Ramírez

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Se trata de una demanda en subrogación presentada ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, por la compañía aseguradora de Apelco del Caribe, Inc. ("Apelco"), para recobrar por daños y perjuicios ocasionados en una almacén de refrigeración operado por Apelco, en un edificio ubicado en el Barrio Sabana Seca de Toa Baja.

La parte apelante, Real Legacy Assurance Company, Inc. ("*Real Legacy*"), antes denominada Royal & Sun Alliance Insurance (P.R.), Inc., es la compañía aseguradora de Apelco, que pagó a ésta por las pérdidas a su mercancía provocadas por los desperfectos en el congelador y los rociadores del sistema de prevención de incendio del almacén.

El principal apelado es F.J. Graziano & Associates, Inc. ("*Graziano*"), quien fue el contratista a cargo de la remodelación del almacén ocupado por Apelco, incluyendo el congelador y el sistema de prevención de incendios. También se han incluido a otras partes, en su calidad de subcontratistas de Graziano o dueños del edificio. ▮

Mediante sentencia parcial emitida el 1ro de octubre de 2004, el Tribunal de Primera Instancia desestimó la demanda de Real Legacy, debido a que el contrato entre Graziano y Apelco contiene una cláusula que establece que las partes se relevan de responsabilidad por los daños que hubieran sido cubiertos por su compañía de seguros. La cláusula también se extiende a los subcontratistas.

Confirmamos.

### II

Según se desprende del recurso, Apelco es una corporación organizada bajo las leyes de Puerto Rico con oficinas principales en Guaynabo, dedicada, entre otras cosas, a operar almacenes de comestibles.

Para 1998, Apelco decidió arrendar un local en un edificio perteneciente a las corporaciones Maderas Tratadas y/o Amistad Properties, ubicado en la Carretera 865 del Barrio Sabana Seca de Toa Baja. Conforme al acuerdo entre las partes, Apelco podría realizar las mejoras necesarias en el local para habilitarlo para su uso como almacén.

Graziano es una corporación organizada bajo las leyes de Kansas, dedicada, entre otras cosas, al diseño de almacenes frigoríficos.

El 31 de agosto de 1998, Apelco suscribió un contrato con Graziano para el diseño, construcción e instalación de un almacén frigorífico en el local arrendado por Apelco, en el edificio del Barrio Sabana Seca de Toa Baja. Graziano se obligó a adquirir e instalar todos los componentes necesarios para la operación del almacén frigorífico, incluyendo tres compresores y un sistema de prevención de incendios.

El contrato, que estaba redactado en el idioma inglés, disponía que Graziano sería responsable por el diseño y materiales del almacén (*"shall be solely responsible for all materials, parts, design, fabrication, installation, means, methods, techniques, sequences and procedures"*) y que su trabajo no tendría defectos (*"free from faults and defects"*).

El Artículo 7.12 del Contrato establecía, en lo pertinente:

*"To the fullest extent permitted by law, [Graziano] shall indemnify and hold harmless [Apelco] and its agents and employees from and against all claims, damages, losses and expenses, including but not limited to reasonable attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense is caused in whole or in part by any negligent act or omission of [Graziano], any subcontractor of [Graziano], anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable."*

Graziano se comprometió a responder por las actuaciones u omisiones de sus empleados, subcontratistas y agentes (*"shall be liable ... for the acts or omissions of its employees, subcontractors and their agents, employees and subcontractors"*). También se obligó a remediar cualquier daño o pérdida causado por Graziano o sus agentes (*"shall promptly remedy all damage or loss to any property caused in whole or in part by [Graziano], and subcontractor, and any sub-subcontractor, or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable"*).

No obstante, las partes acordaron que Apelco adquiriría un seguro de responsabilidad y que podría adquirir seguros para protegerse de cualquier reclamación relacionada con el contrato:

*"[Apelco] shall be responsible for purchasing and maintaining its own liability insurance and, at its option, may maintain such insurance as will protect him against claims which may arise from operations under the Contract."*

Graziano también se comprometió a mantener un seguro de responsabilidad para cubrir su responsabilidad y la de Apelco contra reclamaciones de empleados y contra pérdidas a la propiedad surgidas como resultado del contrato. Graziano se obligó a mantener la cubierta hasta por dos años, luego de completada la obra.

No obstante lo anterior, el Artículo 13.3 del Contrato establecía una cláusula de relevo mutuo de responsabilidad entre las partes, por cualesquiera pérdidas que hubiesen sido pagadas a Apelco o Graziano por sus compañías de seguro. Dicho artículo disponía:

*"[Apelco] and [Graziano] waive all rights against each other for damages caused by fire or other perils to*

*the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance. [Graziano] shall require similar waivers in favor of [Apelco] and [Graziano] by subcontractors and sub-subcontractors."*

Graziano procedió a llevar a cabo las obras contratadas por Apelco. Graziano obtuvo un seguro de responsabilidad de parte de American.

Para realizar los trabajos, Graziano utilizó sub-contratistas locales. Graziano sub-contrató a Tropical, una corporación local, para la instalación de tres compresores para el sistema de refrigeración del almacén. Tropical tenía una póliza expedida por St. Paul.

Graziano también sub-contrató a Grinnell, otra corporación local, para llevar a cabo la instalación del sistema de prevención de incendios del almacén. Entre otros equipos, Grinnell instaló rociadores de agua. Para esta tarea, Grinnell, a su vez, sub-contrató a Security Products y al ingeniero Sinz.

Graziano y sus contratistas llevaron a cabo los trabajos acordados con Apelco. Apelco comenzó a operar el almacén, que fue dedicado para almacenamiento de comestibles. Apelco adquirió un seguro de Real Legacy para cubrir pérdidas a su mercancía.

Posteriormente, en la madrugada del 1ro de enero de 2000, los compresores instalados por Graziano y Tropical en el almacén se dañaron, lo que ocasionó que el congelador dejara de funcionar y se dañara toda la mercancía.

Apelco reclamó a Graziano que se reparara el equipo. Graziano contrató al Sr. Felix de Jesús Feliciano, quien es un técnico especialista en este tipo de maquinaria para realizar la correspondiente reparación. El Sr. de Jesús procedió a reparar el equipo. Dicha parte alega que no se le pagó por sus servicios.

Apelco presentó una reclamación a Real Legacy bajo su póliza de seguros. Eventualmente, la apelante le pagó a Apelco $278,038.08 por sus pérdidas.

Pocos meses después, en la madrugada del 10 de septiembre de 2000, uno de los rociadores de agua en el área del congelador del almacén se activó por algún defecto. Como consecuencia, cayó una gran cantidad de agua sobre la mercancía de Apelco, lo que provocó pérdidas a la empresa.

Apelco presentó una nueva reclamación a Real Legacy. La apelante le pagó $147,049.69.

En septiembre de 2001, la parte apelante instó la presente demanda por daños y perjuicios en subrogación ante el Tribunal de Primera Instancia contra Graziano, American, Grinnell, Maderas Tratadas y Amistad Properties, caso civil núm. DDP2001-0858. La apelante solicitó el reembolso de los $147,049.69 pagados a Apelco por los daños ocasionados a dicha parte por los desperfectos en el sistema de prevención de incendios del almacén.

Las partes demandadas contestaron separadamente la demanda y negaron las alegaciones. Presentaron, además, diversas demandas contra coparte y varias demandas en contra de tercero contra Apelco. Grinnell también presentó una demanda contra tercero contra Security Products y el ingeniero Sinz. Las partes se contestaron la mayoría de estas reclamaciones.

En 2002, luego de que la apelante hubiera llegado a un ajuste final de las pérdidas sufridas por Apelco por motivo de los desperfectos en el congelador, la apelante instó una segunda demanda por daños y perjuicios contra Graziano, American, Tropical, St. Paul, Maderas Tratadas y Amistad Properties y solicitó que se le

reembolsase por los $278,038.08 pagados a Apelco por este concepto, caso civil núm. DDP2002-0017.

Al igual que en la primera acción, los demandados contestaron la demanda y negaron las alegaciones. También presentaron diversas reclamaciones contra co-parte y contra tercero que imputaron responsabilidad por los daños reclamados por la apelante.

En septiembre de 2002, la parte apelante solicitó desistir de su reclamación contra Maderas Tratadas en el caso DDP2001-0858. El Tribunal de Primera Instancia no llegó a adjudicar dicha solicitud.

En febrero de 2003, la apelante también solicitó desistir de su demanda contra Maderas Tratadas en el caso DDP2002-0017. El 10 de febrero de 2003, el Tribunal de Primera Instancia emitió la correspondiente sentencia parcial.

Poco después, el Sr. Félix de Jesús presentó una tercera demanda por cobro de dinero contra Graziano y otras partes y solicitó que se le pagara por los servicios realizados para la reparación del congelador, caso civil núm. DCD2003-0893.

Graziano contestó la demanda y se opuso a lo anterior. También presentó demandas contra tercero contra las otras partes que participaban en los otros casos y les reclamó responsabilidad por la obligación. Las partes se contestaron sus distintas reclamaciones.

El 5 de junio de 2003, ocurrió un nuevo incidente de activación de uno de los rociadores de agua en el almacén. Apelco presentó una nueva reclamación a Real Legacy, que le pagó $59,769.16 por sus daños.

En diciembre de 2003, Graziano y American presentaron una moción de sentencia sumaria en el caso DDP2001-0858. Alegaron que la parte apelante estaba impedida de subrogarse en los derechos de Apelco contra ellas, porque mediante el citado Artículo 13.3 del contrato entre las partes, Apelco y Graziano se habían conferido un relevo mutuo de responsabilidad por cualesquiera daños que les hubieran sido pagados por sus compañías de seguro.

Las otras partes se unieron a la moción de sentencia sumaria de Graziano. La apelante se opuso.

En enero de 2004, mientras la moción de Graziano se encontraba pendiente, la parte apelante solicitó enmendar sus alegaciones en el caso DDP2001-0858, para incluir en su reclamación los $59,769.16 pagados a Apelco por el incidente del 5 de junio de 2003.

En abril de 2004, Graziano y American presentaron una solicitud de sentencia sumaria en el caso DDP2002-0017, basada en los mismos argumentos que habían presentado en el caso DDP2001-0858. Las otras partes demandadas se unieron. La apelante se opuso.

En junio de 2004, el Tribunal de Primera Instancia decidió consolidar las tres controversias.

Luego de otros trámites, el 1ro de octubre de 2004, el Tribunal de Primera Instancia emitió la sentencia sumaria parcial apelada, declaró con lugar las mociones de sentencia sumaria presentada por Graziano y American y ordenó la desestimación de las demandas presentadas por Real Legacy contra todas las partes.

En su sentencia, el Tribunal de Primera Instancia observó que el citado Artículo 13.3 del contrato entre Apelco y Graziano establecía una cláusula de relevo mutuo de responsabilidad entre las partes, por cualesquiera daños que les hubieran sido pagados por sus compañías de seguro y que la cláusula se extendía a los sub-contratistas traídos al proyecto por Graziano.

El Tribunal determinó que todos los daños sufridos por Apelco en los incidentes objeto de las demandas le habían sido pagados precisamente por la apelante, que era su compañía aseguradora, por lo que ésta estaba impedida de reclamar el reembolso de dichas cantidades, por vía de subrogación de los derechos de Apelco.

La distinguida Sala apelada expresó:

*"En el caso que nos ocupa, ... es un hecho incontrovertido que a tenor con [la cláusula 13.3 del contrato suscrito entre Graziano y Apelco] ambas partes renunciaron a reclamarse mutuamente por daños ocasionados por fuego u otras contingencias cubiertas por una póliza de seguros de propiedad... [D]icha cláusula es aplicable y beneficia tanto a contratistas como a subcontratistas de Graziano. Apelco adquirió una póliza de seguros de la demandante [Real Legacy]. Así también, surge de las alegaciones de la demanda que dicha póliza cubrió los daños surgidos por Apelco al ocurrir el incidente del congelador el 1 de enero de 2001 y los incidentes con el sistema de rociadores el 10 de septiembre de 2000 y el 5 de junio de 2003, respectivamente."*

De conformidad con la normativa antes esbozada, es forzoso concluir que [Real Legacy] no puede adquirir mediante subrogación derechos en contra de Graziano y Grinnell que su asegurado Apelco no tenía. Esta última renunció indubitadamente a entablar reclamaciones en contra de Graziano y sus contratistas por daños que fuesen cubiertos por una póliza de seguros, por lo que transfirió tales riesgos exclusivamente a su aseguradora y relevó de su responsabilidad a Graziano y a sus contratistas. Por lo tanto, [Real Legacy] carece de causa de acción en contra de Graziano y de Grinnell.

El Tribunal ordenó la desestimación de las reclamaciones instadas por la parte apelante y de las demandas contra co-parte y contra tercero predicadas sobre dichas reclamaciones, por no existir motivo para posponer su dictamen. Quedó pendiente de adjudicación la reclamación de cobro de dinero presentada por el Sr. de Jesús en el caso DCD2003-0893.

El 15 de octubre de 2004, antes de que se hubiera notificado a las partes la sentencia parcial emitida por el Tribunal de Primera Instancia, ocurrió un tercer incidente de activación de los rociadores. En esta ocasión, las pérdidas supuestamente excedieron $65,000.00.

La sentencia del Tribunal fue archivada en autos y notificada el 19 de octubre de 2004. Real Legacy solicitó al Tribunal la formulación de determinaciones adicionales de hechos y que reconsiderara su sentencia parcial.

Mientras estaba pendiente este trámite, en noviembre de 2004, la parte apelante visitó el almacén para investigar el nuevo incidente. En ese momento, se le informó que los empleados de Grinnell habían removido el rociador defectuoso. La parte apelante alega que, en ese momento, tuvo conocimiento por primera ocasión que Grinnell había estado proveyendo mantenimiento a los rociadores, bajo un contrato con Apelco.

El 22 de diciembre de 2004, la parte apelante presentó una Urgente Moción ante el Tribunal de Primera Instancia para que se le permitiera conducir descubrimiento de prueba en torno a lo anterior y para oponerse a la moción de sentencia sumaria de Graziano.

Luego de otros trámites, el 30 de diciembre de 2004, el Tribunal de Primera Instancia denegó la solicitud de determinaciones adicionales y la moción de reconsideración presentada por la apelante. El Tribunal también denegó la moción urgente presentada por dicha parte.

Insatisfecha, Real Legacy acudió ante este Tribunal.

## III

En su recurso, Real Legacy plantea que el Tribunal de Primera Instancia erró al declarar con lugar la

moción de sentencia sumaria instada por Graziano y American, y al concluir que la cláusula 13.3 del contrato entre Apelco y Graziano constituía una renuncia de derechos que impedía a la apelante subrogarse en los derechos de Apelco contra las partes apeladas. Real Legacy también plantea que el Tribunal de Primera Instancia erró al concluir que la referida cláusula era aplicable a Grinnell y a los otros sub-contratistas, y que la Sala apelada abusó de su discreción al no permitirle conducir descubrimiento de prueba con relación al incidente ocurrido el 15 de octubre de 2004.

La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, según se conoce, permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 374 (2000); *Piñero v. A.A.A.*, 146 D.P.R. 890, 904 (1998); *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 526 (1998).

Por su parte, la Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando *"no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente."* Véase, en general, *Vera et al. v. Dr. Bravo et als.*, 161 D.P.R. ___ (2004), **2004 J.T.S. 40**, a la pág. 744; *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *P.A.C. v. E.L.A. I*, 150 D.P.R. a la pág. 374; *López v. J. Gus Lallande*, 144 D.P.R. 774, 783 (1998); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 869 (1995).

El Tribunal Supremo de Puerto Rico ha advertido que la sentencia sumaria procede en casos claros cuando no hace falta una vista evidenciaria. *Rivera v. Depto. de Hacienda*, 149 D.P.R. 141, 154-155 (1999); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802 (1993).

La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 914 (1994).

Al hacer su evaluación, el Tribunal puede considerar la totalidad de las alegaciones y documentos que obren en el récord. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. a las págs. 721-723; *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 525 (1983); *Padín v. Rossi*, 100 D.P.R. 259, 263-264 (1971).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae inicialmente sobre la parte que solicita la sentencia sumaria. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. *Soto v. Rivera*, 144 D.P.R. a la pág. 518; *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994).

Una vez la moción de sentencia sumaria ha sido presentada y se sostenga en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 D.P.R. 563, 576 (1997); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. a la pág. 633.

En el presente caso, según hemos visto, se trata de una acción por daños y perjuicios presentada por Real

Legacy en subrogación de los derechos de Apelco.

Según ha aclarado el Tribunal Supremo de Puerto Rico, la subrogación es el derecho del asegurador a situarse en la posición del asegurado para gestionar el recobro de la pérdida o el daño pagado por él contra aquellos terceros que puedan serle legalmente responsables al asegurado. *Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 D.P.R. 523, 532 (1999); *CNA Casualty of P.R. v. Torres Díaz*, 141 D.P.R. 27, 42 (1996); *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. 203, 211 (1994); *Aseg. Lloyd's London v. Cía. Des. Comercial*, 126 D.P.R. 251, 267-268 (1990).

La subrogación surge por operación de ley y sustituye a la aseguradora en el lugar del acreedor, a cuyos derechos en relación con la deuda aquélla accede. *Gen. Accid. Ins. Co. P.R. v. Ramos,* 148 D.P.R. a la pág. 532; *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 D.P.R. a la pág. 211; véase, además, los artículos 1163 a 1167 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3247 a 3251.

Cuando el asegurado ha entrado en un contrato con terceras partes, el asegurador, una vez efectuado el pago por la pérdida, se subroga en los derechos del asegurado bajo el contrato. *CNA Casualty of P.R. v. Torres Díaz,* 141 D.P.R. a la pág. 42.

La subrogación, sin embargo, no confiere mayores derechos al que se subroga que los que tenía el asegurado. El asegurador, en este sentido, se coloca en la misma posición del asegurado, *"pues nadie puede adquirir –vía subrogación- derechos que no tenía aquél cuyos derechos invoca el asegurador." Gen. Accid. Ins. Co. P.R. v. Ramos*, 148 D.P.R. a las págs. 532-533 (citando a 16 Couch Cyclopedia of Insurance Law, sec. 61, 1983, págs. 118-120); *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 D.P.R. a la pág. 211 (id.).

En la situación de autos, las demandas por daños y perjuicios presentadas por Real Legacy pretenden el reembolso, por vía de subrogación, de las cantidades que la apelante pagó a Apelco. La apelante, en este sentido, sustituye a Apelco y ocupa su misma posición, con relación a su contrato con Graziano.

El Tribunal de Primera Instancia observó que bajo la citada cláusula 13.3 del contrato, ambas partes renunciaron expresamente a sus derechos a reclamarse por los daños causados por fuego o por cualquier otra causa hasta el monto que estuviese cubierto por un seguro, excepto en cuanto al derecho a cobrar de la póliza (*"waive all rights against each other for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance"*).

El Tribunal también consideró que las partes acordaron la concesión de relevos similares en cuanto los sub-contratistas de la obra.

Somos de la opinión que los términos de la cláusula en cuestión son claros, y no dejan dudas sobre la intención de los contratantes, por lo que las partes deben atenerse a su sentido literal. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *González v. Sucn. Cruz Cruz*, 163 D.P.R. ___ (2004), **2004 J.T.S. 201**, a la pág. 509; *Res. Parkville v. Luciano, Palou*, 159 D.P.R. ___ (2003), **2003 J.T.S. 73**, a las págs. 957-958; *Trinidad v. Chade*, 153 D.P.R. 280, 289 (2001); *Soc. de Gananciales v. Vélez & Asoc.,* 145 D.P.R. a la pág. 527; *Marina Ind., Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 72 (1983); 31 L.P.R.A. sec. 3471.

La parte apelante plantea que las otras disposiciones citadas del contrato establecían la responsabilidad de Graziano de responder por los defectos en la obra y por las actuaciones de sus agentes y sub-contratistas. No existe, sin embargo, inconsistencia alguna entre el Artículo 13.3 y las otras cláusulas citadas por la apelante. **En ausencia de un seguro**, Graziano viene obligada a responder ante Apelco por cualesquiera daños surgidos como consecuencia de los trabajos de remodelación del almacén.

En el presente caso, sin embargo, Apelco fue compensada por sus daños mediante el pago por parte de Real Legacy. De acuerdo a los términos claros del Artículo 13.3, dicha parte renunció a cualquier otro remedio frente a Graziano. Real Legacy, que ocupa la misma posición de Apelco, no tiene reclamación alguna que ejercitar frente a Graziano.

Debe recordarse que, en nuestra jurisdicción, las partes generalmente son libres para establecer los pactos, cláusulas y condiciones que estimen convenientes, siempre que no sean contrarias a las leyes, a la moral o al orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. sec. 3372; *Álvarez de Choudens et al. v. Rivera*, 165 D.P.R. ___ (2005), **2005 J.T.S. 90**, a la pág. 1,366; *Irizarry López v. García Cámara*, 155 D.P.R. ___ (2001), **2001 J.T.S. 164**, a la pág. 456.

La parte apelante plantea que el Tribunal de Primera Instancia erró al concluir que el relevo de responsabilidad citado aprovechaba también a los sub-contratistas de la obra. La interpretación del Tribunal de Primera Instancia es consistente con y encuentra apoyo en el lenguaje de la cláusula, que hace referencia específica a los contratistas y sub-contratistas.

Real Legacy aduce que el contrato entre Apelco y Graciano era un contrato de adhesión, ya que, a diferencia de Graziano, Apelco no se dedica al diseño y construcción de almacenes de refrigeración. No está claro que, por este sólo fundamento, debamos considerar que la relación entre las partes era una de adhesión. En cualquier caso, ello tampoco justificaría ignorar los términos del relevo de responsabilidad.

Aunque un contrato de adhesión se interpreta contra la parte que lo redactó, en caso de ambigüedad, ello no justifica ignorar o contradecir sus términos, si éstos son claros. *López v. Atlantic Southern Ins. Co.,* 158 D.P.R. ___ (2003), **2003 J.T.S. 14**, a las págs. 511-512; *Domínguez v. GA Life*, 157 D.P.R. ___ (2002), **2002 J.T.S. 110**, a la pág. 19; *Quiñones López v. Manzano Pozas*, 141 D.P.R. 139, 156 (1996).

La parte apelante se queja de que el Tribunal de Primera Instancia denegara la moción urgente que presentó el 22 de diciembre de 2004, para que se le permitiera conducir descubrimiento de prueba contra Grinnell y para verificar la relación entre dicha parte y Apelco. La parte apelante alega que dicho descubrimiento era necesario para oponerse a la moción de sentencia sumaria de Graziano.

No estimamos que el Tribunal de Primera Instancia hubiera abusado de su discreción al denegar la solicitud de la apelante. En el momento en que la apelante solicitó conducir el descubrimiento en cuestión, el Tribunal de Primera Instancia ya había emitido sentencia y había ordenado la desestimación de las demandas presentadas por la apelante. El dictamen del Tribunal, según hemos visto, no estuvo basado en conjunto específico alguno de hechos que hubieran podido ser controvertidos por la apelante, sino en el lenguaje claro del contrato entre Apelco y Graziano.

La solicitud de la apelante estuvo motivada por una investigación supuestamente conducida por dicha parte a raíz de un incidente ocurrido el 15 de octubre de 2004, luego de que el Tribunal de Primera Instancia dictara su sentencia. Dicho incidente no formaba parte de la controversia, la cual ya había quedado resuelta a base del lenguaje específico del contrato.

En estas circunstancias, no entendemos que el Tribunal de Primera Instancia hubiera abusado de su discreción al denegar la moción urgente de la apelante.

Por los fundamentos expresados, se confirma la sentencia apelada.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Jueza Fraticelli Torres concurre con opinión escrita.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**VOTO CONCURRENTE DE LA
JUEZA MIGDALIA FRATICELLI TORRES – 2006 DTA 53**

San Juan, Puerto Rico, a 28 de febrero de 2006

Concurro con la mayoría del panel en que procede confirmar la sentencia sumaria apelada en el caso de autos. Difiero, sin embargo, en que el único fundamento para tal determinación sea que el contrato suscrito entre Apelco y Graziano privó a la aseguradora apelante de su derecho a subrogarse en el lugar de su asegurado, para recuperar del causante del daño las cuantías -pagadas como indemnización por los daños causados a la propiedad del asegurado.

En este caso, el contrato de seguro entre Royal Insurance Company of Puerto Rico, Inc., hoy Real Agency Assuance Company, Inc., se suscribió el 22 de diciembre de 1997 y extendía su cobertura al 31 de diciembre de 2000. Ese contrato contiene varias cláusulas sobre la subrogación de derechos, entre ellas:

En la Sección IV sobre *"Commercial General Liability Conditions"*, apartado 8. *Transfer of Rights of Recovery Against Others to Us*:

*"If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them."*

Apéndice, pág. 476.

En la Sección sobre *"Commercial Property Conditions"*, apartado *I. Transfer of Rights of Recovery Against Others to Us*:

*"If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:*

*1. Prior to a loss to your Covered Property or Covered Income.*

*2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:*

    *a. Someone insured by this insurance;*

    *b. A business firm:*

        *(1) Owned or controlled by you, or*

        *(2) That owns or controls you;*

    *c. Your tenant*

    *This will not restrict your insurance."*

Apéndice, pág. 499.

Nos llama la atención que en esta última cláusula, se permite la renuncia de derechos del asegurado antes de que ocurra una pérdida, sin definirse el alcance de la disposición contractual. Y, más aún, que no se advierta al asegurado de las consecuencias adversas sobre sus propios derechos bajo la póliza, como asegurado, si otorgaba relevos de responsabilidad a terceros que pudieran serle responsables a la aseguradora, mediante el instituto de la subrogación. No aparece en la póliza ninguna referencia a la obligación del asegurado de informar sobre situaciones o condiciones contractuales que pudieran comprometer el derecho de la aseguradora, ya fueran creadas por él o por terceras personas de manera intencional o negligente.

Ante la falta de previsión y precisión en las condiciones del contrato de seguro sobre los efectos de este tipo de acuerdos generados al margen de su cobertura, no podemos proveer a la apelante más protección que la que ella misma procuró en el extenso y complejo contrato que suscribió con Apelco. No olvidemos que en el contrato de seguro por pérdida de propiedad, si el asegurado es cocausante del daño, no procede la subrogación, al menos, no por la suma total. Rolando Cruz, *Derecho de Seguros*, San Juan, **Publicaciones J.T.S.** 2002, §§ 20.8- 20.9, págs. 251 y ss.

En este caso, el propio asegurado produjo el relevo de responsabilidad del tercero hasta el monto de la póliza. Podríamos extender la pérdida del derecho de subrogación a los supuestos en que la imposibilidad de subrogarse surge por actos del asegurado. La razón es que su conducta pudo anticiparse en el contrato por la aseguradora y sancionarse de conformidad, incluso, con un aumento de primas, ▇ para cubrir el riesgo adicional, o con la negación de cubierta, si lo hacía a espaldas y sin autorización de la aseguradora. No olvidemos tampoco que, así como la falta de cooperación de un asegurado puede liberar a la aseguradora de pagarle la indemnización acordada, en el caso en que sus actos unilaterales afecten el derecho de la aseguradora a subrogarse ante el causante del daño, también podría ese asegurado estar sujeto a la misma sanción.

Una solución parecida se ha aceptado en Puerto Rico para el caso de la fianza, contrato que comparte con el seguro los beneficios del derecho a la subrogación. Incluso, en *Caguas Plumbing, Inc. v. Continental Const. Corp.*, ya citado, el Tribunal Supremo expresó que *"el Artículo 1751 [que reconoce la subrogación en la fianza] surge para proteger estas legítimas expectativas del fiador. Si el acreedor actúa de manera que perjudique la posición en la cual el fiador ha de encontrarse al subrogarse en los derechos de dicho acreedor, el Artículo 1751 protege al fiador.* ▇ *[Ver nota abajo.]"* En tales circunstancias, el fiador *"puede liberarse de su obligación de pagarle al acreedor en tanto y en cuanto su negligencia, al dejar que el deudor se escapara, le*

*imposibilitó al fiador repetir contra el deudor*. Por esto, el tribunal expresó en *E.L.A. v. Urb. Damiro, Inc.*, 112 D.P.R. 244, 249 (1982), que *"[s]i no existe nexo causal entre el acto del acreedor y el impedimento en la subrogación"*, no es de aplicación el Artículo 1751. *"El precepto exige una conexión directa entre el 'hecho del acreedor', positivo y negativo, según los casos, y la imposibilidad de subrogación del fiador. Es precisa, pues, la correspondiente relación de causa a efecto, de modo que la conducta del acreedor sea determinante de la pérdida del derecho o de la garantía de que se trate." Guilarte Zapatero, supra, en la pág. 421." Caguas Plumbing, Inc., v. Continental Const. Corp.*, **2001 J.T.S. 169**, a la pág. 510.

Por entender que el Tribunal de Primera Instancia debió considerar los documentos e incidencias de la relación contractual entre la apelante y su asegurado como parte del análisis jurídico requerido para disponer sumariamente del pleito, concurro con la sentencia mayoritaria.

Migdalia Fraticelli Torres<br>
Jueza de Apelaciones

### ESCOLIOS VOTO CONCURRENTE DE LA
### JUEZA MIGDALIA FRATICELLI TORRES - 2006 DTA 53

**1.** En un contrato de fianza, el fiador se compromete a pagar al acreedor en caso de que el deudor incumpla el contrato subyacente. 31 L.P.R.A. sec. 4871. Sin embargo, a diferencia de en el contrato de seguro, en la fianza, el fiador puede repetir contra el deudor, subrogándose en la posición del acreedor, una vez dicho fiador haya cubierto la deuda del deudor. 31 L.P.R.A. sec. 4912. [Vicente Guilarte Zapatero, *Comentarios al Código Civil y Compilaciones Forales*, dirigidos por Manuel Albaladejo, Tomo XXIII, en las págs. 265 *et seq*.] *A cambio de este derecho, el fiador cobra una prima más baja por la fianza que la que cobraría una aseguradora por un seguro. Caguas Plumbing, Inc., v. Continental Const. Corp.*, res. el 30 de noviembre de 2001, 155 D.P.R. ___, **2001 J.T.S. 169**, que cita con aprobación a *Caribe Lumber & Trading Corp. v. Inter-American Builders, Inc.*, 101 DPR 458, 468-469 (1973).

**2.** Nota al calce de la opinión:

*"[S]i el derecho o la subrogación que corresponde al fiador ha sido lesionado, se opera un cambio en las condiciones de actuación de la obligación garantizada existentes al tiempo de constituirse la fianza y que fueron tenidas en cuenta al asumir ésta, presumiendo que podría contar con todos los derechos y acciones del acreedor a efectos de resarcirse de lo que, eventualmente, debiera pagar. Si esto se hace imposible por hecho del acreedor, el perjuicio del fiador sólo se recompensa con la extinción de la fianza." Id.* en la pág. 408.