# 2007 DTA 112

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE PONCE**
**PANEL XI**

J.O.G. ENGINEERING CORP.
Demandante-Recurrido

v.

UNITED SURETY AND INDEMNITY COMPANY, ET ALS.
Demandados-Recurrentes

Núm. KLCE-07-00725

San Juan, Puerto Rico, a 12 de septiembre de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos United Surety & Indemnity Company, en adelante USIC, la peticionaria, mediante escrito de *certiorari,* y solicitó que revoquemos la orden dictada por el Hon. David Muñoz Ocasio, Juez del Tribunal de Primera Instancia, Sala Superior de Ponce. ■ El dictamen recurrido declaró no ha lugar la solicitud de sentencia sumaria parcial, presentada por USIC, a pesar de que no existía una controversia real de hechos y sólo restaba aplicar el derecho. La orden fue redactada de manera escueta y omite los fundamentos que dieron base a su decisión. ■

Expedimos el auto solicitado y revocamos el dictamen recurrido.

### I

Los hechos que originan el recurso de autos son los siguientes.

Hotel Plaza Las Delicias, Inc., dueño de la obra, contrató a Deckers Construction, Inc., contratista, para que realizara el proyecto de construcción Hotel Plaza Las Delicias en Ponce, Puerto Rico.

Para viabilizar el cumplimiento del proyecto, la companía de fianza, USIC, expidió una fianza de pago y

cumplimiento de obra, *"Payment and Performance Bond"*, a nombre de Deckers Construction, Inc., por $5,423,490.00 (cinco millones cuatrocientos veintitrés mil cuatrocientos noventa dólares). Dicha fianza de cumplimiento, contenía una estipulación a favor de tercero en la que garantizaba las obras, los materiales así como el equipo contratado por su afianzado principal Deckers. Además, contenía un endoso titulado *"Assigment of Funds Prohibition"* en el que se advirtió, como condición para la eficacia de la fianza, que la violación a la prohibición de ceder y/o transferir fondos provenientes del contrato de construcción garantizado acarrearía la nulidad de la fianza. El contenido del endoso lee de la siguiente manera:

*"THIS ENDORSEMENT CHANGES THIS BOND, READ CAREFULLY*

*The proceeds of the contract guaranteed by this bond constitute a collateral to the surety; therefore, the surety has a vested interest over said funds. The Principal of this bond cannot assign, directly nor indirectly, the proceeds of the contract guaranteed by this bond. The assignment of the proceeds of the contract guaranteed by this bond annuls this bond and releases that surety from any and all obligations arising from this bond."*

Para poder llevar a cabo los trabajos de construcción en el proyecto Hotel Plaza Las Delicias, Deckers contrató los servicios de J.O.G. Engineering Corp., en adelante JOG. Una vez los trabajos acordados fueron terminados y aprobados por Deckers, JOG requirió a éste el pago por los servicios prestados que ascendían a $55,618.00 (cincuenticinco mil seiscientos dieciocho dólares). Por su parte, Deckers procedió a hacer un pago inicial el cual no satisfizo la totalidad de la deuda. Inconformes con la situación, JOG presentó una demanda en cobro de dinero ante el Tribunal de Primera Instancia contra Hotel Las Delicias Inc., dueño de la obra, y la companía de fianza USIC. En ésta, JOG reclamó a los demandados, de forma solidaria, que le pagaran la deuda vencida, líquida y exigible de $48,618.50 (cuarentiocho mil seiscientos dieciocho dólares con cincuenta centavos) más los intereses, costas, gastos y honorarios de abogados. Alegaron además, que USIC es responsable de la referida deuda, por haber expedido una fianza de pago y cumplimiento a nombre de Deckers.

Por su parte, la codemandada USIC, en su contestación a la demanda, levantó como defensa afirmativa que Deckers y Westernbank de Puerto Rico otorgaron un contrato de cesión que extinguió su obligación contractual por contravenir lo estipulado mediante el endoso titulado *"Assignments of Funds Prohibition"*.

Luego de estos trámites procesales, USIC presentó una moción de sentencia sumaria parcial, acompañada de los documentos que sostienen su teoría, y solicitó que:

*"1) No existe controversia genuina sobre los hechos materiales del caso, ya que no hay duda de la coexistencia de dos obligaciones contractuales válidas. Una, la fianza emitida por USIC a favor de Deckers; y otra, la cesión celebrada entre Deckers y Westernbank de Puerto Rico.*

*2) No existe fundamento en derecho que sustente la causa de acción incoada por JOG. Lo anterior, por haber los actos voluntarios de Deckers contravenido los términos y condiciones de USIC (la fiadora) que de forma clara delimitó a través del endoso anejado como parte del texto del contrato de fianza y, por tanto, la relevaron de toda responsabilidad.*

*3) Procede se dicte sentencia sumaria parcial a su favor y que se desestime con perjuicio la demanda."*

Entre los documentos que acompañó a la moción, se encuentra el contrato de cesión celebrado entre Deckers, el cedente, y Westernbank de Puerto Rico, el cesionario, que en lo pertinente dispone lo siguiente:

*"Para garantizar el pago del préstamo, el CESIONARIO ha requerido a los CEDENTES que éstos cedan y transfieran a su favor las cuentas por cobrar y contrato de construcción obtenidos para el desarrollo del*

*proyecto conocido como "Hotel Plaza Las Delicias" en la Calle Unión, Reina y Méndez Vigo en Ponce, Puerto Rico, suscrito el 21 de octubre de 2004 entre Deckers Construction, Inc. y Hotel Plaza Las Delicias, Inc., copia del cual se une como Anejo "B".*

**Por la presente, los CEDENTES ceden y traspasan irrevocablemente al CESIONARIO hasta la cantidad de $750,000.00 producto del contrato Anejo "B"."**

En su escrito de oposición, JOG adujo la improcedencia de la solicitud de sentencia sumaria por entender que había controversia sobre:

*"1) La interpretación de los términos y condiciones establecidos en el contrato de fianza y la extensión de la alegada cesión, por entender que lo único que prohibía la fianza era el traspaso y/o cesión de los fondos provenientes del contrato de construcción y no lo relacionado al traspaso y/o cesión de fondos provenientes de cuentas por cobrar ajenas al contrato de construcción.*

*2) El contrato de cesión celebrado entre Deckers y Westernbank de Puerto Rico no comprometió los fondos del contrato de construcción garantizado por la fiadora USIC.*

*3) USIC no presentó prueba de que Deckers hizo la cesión aludida.*

*4) La referida cesión no causó perjuicio sustancial a la facultad subrrogatoria de USIC, por lo que no procedía se extinguiera la fianza."*

Atendida la moción de sentencia sumaria presentada por USIC y su correspondiente oposición, el tribunal *a quo* dispuso de ella con un escueto *"No Ha Lugar"*.

Inconforme con la determinación, USIC acude ante nos mediante un recurso de *certiorari*, por entender que erró el tribunal al declarar *"No Ha Lugar"* la solicitud de sentencia sumaria cuando existía una controversia genuina de hechos y, por tanto, sólo restaba aplicar el derecho.

Le asiste la razón. Expedimos el auto de *certiorari* y revocamos la resolución.

## II

### A. Principios de la Relación Contractual

En Puerto Rico rige el principio de la libertad de contratación y las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Artículo 1207 Código Civil, 31 L.P.R.A. sec. 3372. *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 850-851 (1991).

El Artículo 1206 de nuestro Código Civil, 31 L.P.R.A. sec. 3371, dispone que *"[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio."* Una vez es perfeccionado el contrato, éste obliga tanto al cumplimiento de lo expresamente pactado, como a todas las consecuencias que sean conformes con la buena fe, el uso y la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. sec. 3375; *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 347, 348 (1989). Esa obligación de cumplir con lo pactado se funda en el principio de la buena fe, el cual exige no defraudar la confianza que otro ha puesto en una promesa o conducta. *Unisys v. Ramallo Brothers, supra*, 852 (1991).

Conforme las disposiciones del Artículo 1213 del Código Civil, 31 L.P.R.A. sec. 3391, no existe un contrato sino cuando concurren tres requisitos, a saber: 1) consentimiento de los contratantes; 2) objeto cierto

que sea materia del contrato; y 3) causa de la obligación que se establezca. En presencia de un contrato válido, las obligaciones contraídas tienen fuerza de ley entre las partes contratantes y deben cumplirse según lo pactado. 31 L.P.R.A. sec. 2994, 3375, 3451. *Álvarez de Choudens v. Rivera*, ___D.P.R.___, **2005 JTS 90**; *Bauzá v. García López*, 129 D.P.R. 579, 593 (1991).

Es principio reiterado que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, regirá el sentido literal de sus cláusulas. Artículo 1233 del Código Civil, 31 L.P.R.A. sec. 3471; *CNA Casualty of P.R. v. Torres Díaz*, 141 D.P.R. 27 (1996). La jurisprudencia estima por términos claros aquéllos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión, razonamientos o demostraciones susceptibles de impugnación. *Sucn. Ramírez v. Tribunal Superior*, 81 D.P.R. 357 (1959).

Así, el mismo cuerpo legal establece en su Artículo 1235, 31 L.P.R.A. sec. 3473, lo siguiente: *"Cualquiera que sea la generalidad de los términos de un contrato, no deberán entenderse comprendidos en él cosas distintas y casos diferentes de aquéllos sobre que los interesados se propusieron contratar"*.

*"Si alguna cláusula de los contratos admitiere diversos sentidos, deberá entenderse en el más adecuado para que produzca efecto"*. Artículo 1236 del Código Civil, 31 L.P.R.A. sec. 3474. Por lo tanto, si bien hay que considerar la intención de las partes para interpretar los contratos, la interpretación tiene que ser cónsona con el principio de la buena fe y no puede conllevar a resultados incorrectos, absurdos e injustos. *Citibank v. Dependable Ins. Co., Inc.*, 121 D.P.R. 503 (1988).

Sin embargo, al momento de interpretar un contrato es preciso presuponer lealtad, corrección y buena fe en su redacción, e interpretarlo de manera tal que lleve a resultados conformes a la relación contractual y que estén de acuerdo con las normas éticas. Dicho en otras palabras, no se puede buscar oscuridad ni tergiversar la interpretación de los contratos para llegar a resultados absurdos o injustos. *Citibank v. Dependable Ins. Co., Inc., supra*, (1988).

## B. El Contrato de Fianza

El contrato de fianza es aquél mediante el cual una persona se obliga a pagar o cumplir por un tercero, en el caso de no hacerlo éste. Artículo 1721 del Código Civil de Puerto Rico, 31 L.P.RA. 4871. La vida de la fianza depende y está condicionada totalmente a que exista una obligación principal. *G.E.C. & L. v. So. T. & O. Dist.*, 132 D.P.R. 808 (1993). En cuanto a su naturaleza, el contrato de fianza tiene tres características determinantes: (1) la obligación contraída por la fianza es accesoria y subsidiaria; (2) es unilateral porque puede establecerse sin intervención del deudor y aun del acreedor en cuyo favor se constituye; y (3) el fiador es persona distinta del fiado, porque nadie puede ser fiador personalmente de sí mismo. *Caribe Lumber v. Inter. Am. Builders*, 101 D. P.R. 458 (1973).

El Código Civil dispone que la fianza no se presume, debe ser expresa y no puede extenderse a más de lo contenido en ella. Véase, Artículo 1726 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 4876. Si bien nuestra jurisprudencia ha resuelto que un contrato de fianza ha de interpretarse de modo que favorezca las reclamaciones de los terceros beneficiados, dicha interpretación no puede abstraerse de la verdadera intención de las partes. Así, debe atenderse en primer plano el texto del contrato, visto en su totalidad y de acuerdo a las reglas de hermenéutica dispuestas en el Código Civil. *Caguas Plumbing, Inc. v. Continental Const. Corp*, 155 D.P.R. 744; **2001 JTS 169**.

## C. La Cesión de Créditos

La cesión de créditos es un negocio jurídico celebrado entre el acreedor cedente y otra persona, el

cesionario, por virtud del cual el acreedor cedente transmite al cesionario la titularidad del derecho de crédito cedido y todos sus accesorios. Así lo dispone el Código Civil en el Artículo 1418: *"La venta o cesión de un crédito comprende la de todos los derechos accesorios, como la fianza, hipoteca, prenda o privilegio."* 31 L.P. R.A. sec. 3943. Sobre el particular, señala el profesor Vélez Torres, *"[l]a cesión convencional se verifica [...] sin que la relación jurídica sufra cambio en su contenido. Por lo tanto, no se requiere la aprobación del deudor ni el cumplimiento de formas especiales"*. José R. Vélez Torres, *Derecho de Obligaciones,* 2da Edición, Facultad de Derecho Universidad Interamericana, 1997, pág. 251.

Para que la cesión de crédito sea válida, tiene que darse sobre un crédito existente y transmisible, fundado en un título válido y eficaz. Es decir, es indispensable que el crédito cedido exista al momento de la transferencia y que tenga su origen en una obligación válida y eficaz. *Consejo de Titulares v. CRUV,* 132 D.P. R. 707, 717 y 723 (1993); *IBEC v. Banco Comercial,* 117 D.P.R. 371, 377 (1986). También es doctrina reiterada que un cesionario no puede cobrar su acreencia sin antes cumplir con las condiciones que pactaron el deudor y el cedente en el contrato que dio origen al crédito cedido. *The Comm. Ins. Co. v. Compañía de Fomento Industrial,* 123 D.P.R. 150, 160 (1989).

A partir de la cesión, el cesionario se instala en la misma posición y relación obligatoria con respecto al deudor cedido. *Consejo de Titulares v. Titulares v. CRUV, supra,* a la pág. 717; *IBEC v. Banco Comercial, supra,* a la pág. 376. Sin embargo, *"[e]l cambio de acreedor no ha de privar al deudor de las excepciones que disponía frente al cedente, porque lo convenido entre el cedente y el cesionario no puede empeorar la posición del deudor"*. José Puig Brutau, *Fundamentos de Derecho Civil: Contratos en Particular* Tomo II, Vol. II, 336 (2da ed., Ed. Bosch 1982)

## D. La Sentencia Sumaria

La Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.2, permite a la parte contra quien se ha formulado una demanda o reconvención que presente una solicitud de sentencia sumaria, basada o no en declaraciones juradas, para que se dicte sentencia a su favor de manera expedita sobre la totalidad o cualquier parte de la reclamación, es decir, sin celebración del juicio. El propósito principal de esta regla es propiciar la solución justa, rápida y económica de litigios civiles que no presentan controversias genuinas de hechos relevantes y que, por ello, no requieren la celebración de un juicio plenario. Ello implica que en el proceso incoado, respecto a todas o a algunas de sus reclamaciones, sólo resta dirimir las controversias de derecho. *Vera Morales v. Bravo Colón,* ___ D.P.R. ___, **2004 JTS 40**, págs. 744-747.

El promovente de la sentencia sumaria tiene el peso de establecer la ausencia de controversia real sobre los hechos relevantes y que el derecho le favorece. *Hurtado v. Osuna,* 138 D.P.R. 801, 809 (1995), y *Tello Rivera v. Eastern Airlines,* 119 D.P.R. 83, 86 (1987). Para oponerse a la solicitud de sentencia sumaria, la parte contraria deberá presentar documentos y declaraciones juradas que demuestren que hay controversia real sobre los hechos pertinentes y esenciales que el solicitante presenta como indubitados.

Es norma reiterada que la parte opositora no puede descansar solamente en las aseveraciones contenidas en sus propias alegaciones, sino que viene *"obligada a contestar la petición de forma tan detallada y específica, como lo hubiere hecho la parte promovente"*. Regla 36.5 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.5. El Tribunal Supremo ha precisado aún más esta regla al señalar que *"para derrotar una moción de sentencia sumaria no basta con la presentación de meras alegaciones; hay que presentar contradeclaraciones juradas y documentos que creen una genuina controversia sobre hechos materiales sustanciales."* *Audiovisual Language v. Sist. Est. Natal Hnos.,* 144 D.P.R. 563, 576 (1997). Es decir, la parte opositora no puede quedarse cruzada de brazos y descansar en las aseveraciones de sus escritos judiciales, sino que tiene que refutar los hechos alegados mediante la presentación de prueba de igual calidad que la sometida por la parte promovente. *Sánchez v. Aut. de los Puertos,* 153 D.P.R. 559, 570 (2001); *Mercado Vega v. U.P.R.,* 128 D.P.R. 273, 281

(1991); *Flores v. Mun. de Caguas*, 114 D.P.R. 521, 525 (1983).

La ausencia de tal prueba, sin embargo, no conlleva la concesión de la sentencia sumaria a favor del solicitante. *Vera Morales v. Bravo Colón, supra*, pág. 749. El foro sentenciador debe estar convencido de que efectivamente sólo resta aplicar el derecho en una u otra dirección. Para ello debe atender a otras reglas adicionales. Los documentos que acompañan la moción de sentencia sumaria deben interpretarse de la forma más favorable *a la parte que se opone a la moción*, concediéndole el beneficio de toda inferencia que razonablemente se pueda derivar de ellos. Cualquier duda sobre la existencia de una controversia de hecho debe resolverse contra la parte que presenta la solicitud de sentencia sumaria. De surgir una controversia real de los mismos documentos que acompañan a la moción, debe denegar la solicitud y señalar la vista en su fondo. *Corp. Presiding Bishop of CJC of LDS. v. Purcell*, 117 D.P.R. 714, 720-721 (1986); *Roth v. Lugo*, 87 D.P.R. 386, 397 (1963).

Como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar una sentencia sumariamente. En esta tarea tenemos dos limitaciones: primero, sólo podemos considerar los documentos que se presentaron ante el foro de primera instancia y, segundo, sólo podemos determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde al foro de primera instancia. *Vera Morales v. Bravo Colón, supra*, pág. 746.

### III

En el presente caso, la peticionaria USIC expresa que no hay controversia con relación a los siguientes hechos:

*"1) Hotel Plaza las Delicias, Inc. suscribió con Deckers un contrato de construcción para realizar el proyecto Hotel Plaza Las Delicias en Ponce, Puerto Rico.*

*2) USIC expidió una fianza de pago y cumplimiento de obra "Payment and Performance Bond" a favor de Deckers por $5,423,490.00 (cinco millones cuatrocientos veintitrés mil cuatrocientos noventa dólares).*

*3) La fianza de pago y cumplimiento contenía un endoso titulado "Assigment of Funds Prohibition" que prohibía de manera expresa la transferencia y/o cesión de fondos provenientes del contrato de construcción garantizado, y advertía que de así hacerlo, USIC quedaría relevada de cualquier obligación y ello acarrearía la nulidad de la fianza.*

*4) La responsabilidad de USIC está sujeta a los términos y condiciones definidos en la fianza de pago y cumplimiento, y su referido endoso.*

*5) Deckers otorgó un contrato de cesión sobre los fondos provenientes del contrato de construcción del proyecto Hotel Plaza Las Delicias con la entidad bancaria Westernbank de Puerto Rico.*

*6) Deckers cedió los fondos provenientes del contrato de construcción del proyecto Hotel·Plaza Las Delicias; hecho que anuló·la fianza de pago y cumplimiento, y liberó a USIC de toda obligación."*

Por su parte, el recurrido, mediante escrito en oposición, manifestó haber controversia en lo siguiente:

*"1) La interpretación de los términos y condiciones establecidos en el contrato de fianza y la extensión de la alegada cesión, por entender que lo único que prohibía la fianza era el traspaso y/o cesión de los fondos provenientes del contrato de construcción y no lo relacionado al traspaso y/o cesión de fondos provenientes de cuentas por cobrar ajenas al contrato de construcción.*

*2) El contrato de cesión celebrado entre Deckers y Westernbank de Puerto Rico no comprometió los fondos del contrato de construcción garantizado por la fiadora USIC.*

*3) USIC no presentó prueba de que Deckers hizo la cesión aludida.*

*4) La referida cesión no causó perjuicio sustancial a la facultad subrogatoria de USIC, por lo que no procedía se extinguiera la fianza."*

Una vez examinado los argumentos que las partes levantaron en sus escritos y la documentación anejada a los mismos, estamos conteste con la peticionaria sobre la inexistencia de una controversia genuina de los hechos materiales y pertinentes del caso. Sólo resta aplicar el derecho. Por tanto, el asunto medular a resolver es si el contrato de cesión otorgado entre Deckers y Westernbank de Puerto Rico, extinguió la obligación de USIC, al alegadamente contravenir la cláusula esbozada en el endoso titulado *"Assigment of Funds Prohibition"*. Entendemos que sí.

Como es sabido, ante contratos válidos donde su contenido es conforme a la ley, la moral y el orden público; frente a una letra clara; y en ausencia de matices turbios respecto a elementos subjetivos, como lo son: la intención, la capacidad y/o el consentimiento, procede entonces interpretar sus cláusulas conforme fueron redactadas. Cónsono con lo anterior, determinamos que el contrato de cesión así como el de fianza, minuciosamente examinados, son válidos. Se desprende del texto y del momento de perfeccionamiento lo siguiente: 1) redacción de cláusulas claras; 2) ausencia de vicio que invalide el consentimiento; y 3) inexistencia total de controversia sobre elementos subjetivos que nublen la verdadera voluntad de las partes. Sabido es que un contrato que cumpla con lo anterior tendrá fuerza de ley y sus cláusulas se interpretarán restrictivamente.

No cabe duda que el contrato de cesión otorgado entre Deckers y Westernbank de Puerto Rico violó los términos y condiciones expuestos claramente por USIC en el contrato de fianza. Deckers sabía o debió haber sabido que el contrato de fianza emitido por USIC contenía un endoso, *"Assigment of Funds Prohibition"*, donde claramente se le advirtió a Deckers sobre la prohibición de ceder y/o transferir los fondos provenientes del contrato de construcción asegurado y las consecuencias de así hacerlo. Pese a dichas advertencias, Deckers consintió a obligarse con Westernbank de Puerto Rico y cedió voluntariamente los fondos del referido contrato. Hecho que indubitadamente contravino lo dispuesto en el contrato de fianza; en particular, lo redactado en el endoso. En fin, el acto unilateral de Deckers al ceder su crédito a favor de Westernbank de Puerto Rico, tuvo como efecto inmediato la nulidad y extinción de la obligación contractual habida con USIC.

Somos de opinión que tras un análisis de la prueba presentada, quedó demostrado la inexistencia de una controversia sustancial de hechos y, como cuestión de derecho, la peticionaria evidenció tener la razón. Es decir, ante la presencia de dos negocios jurídicos válidos donde uno, la cesión, contravino las condiciones del otro, la fianza, sólo restaba ejecutar la voluntad de las partes.

Además, el escrito en oposición de JOG no configuró la existencia de una controversia real de hechos sostenible en prueba independiente y separada de sus propias alegaciones. Nótese que los alegados hechos controvertidos fueron derrotados por la prueba documental presentada por la peticionaria; a saber: 1) hubo un contrato de cesión de crédito válido; 2) en dicho contrato, Deckers cedió y/o transfirió, de forma irrevocable, los fondos del contrato de construcción a favor de Westernbank de Puerto Rico; y 3) ello contravino lo estipulado en el endoso *"Assigment of Funds Prohibition"*. Siendo ello así, JOG no contradijo efectivamente lo expuesto por USIC en la moción de sentencia sumaria y, por tanto, se hace innecesaria la ventilación de una vista evidenciaria para esos fines.

Concluimos que la prueba documental, aportada por la peticionaria, acreditó con suficiencia en derecho la inexistencia de hechos controvertidos. El Tribunal de Primera Instancia erró al declarar sin lugar la moción de

sentencia sumaria presentada oportunamente por USIC. Por tanto, dictamos sentencia sumaria parcial a su favor y desestimamos, con perjuicio, la demanda en su contra.

**IV**

En mérito de lo anterior, expedimos el auto solicitado, revocamos el dictamen recurrido, y devolvemos el caso al TPI para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

<div align="right">

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones